UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Sofia Shums, pro se,                              :
                                                  :
                    Plaintiff,                    :     **MEMORANDUM AND ORDER**
                                                  :
         -against-                                :     04-CV-4589 (DLI)(LB)
                                                  :
New York City Department of Education             :
and Marilyn Alesi,                                :
                                                  :
                    Defendants.                   :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Pro se plaintiff Sofia Shums challenges her termination from her position as a public school teacher. She asserts claims of First Amendment retaliation; discrimination on the basis of national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law, N.Y. Exec. Law § 296; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107. Defendants have moved to dismiss plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(6). Because plaintiff is a pro se litigant, the court, in deciding this motion, has construed plaintiff's papers broadly, interpreting them to raise the strongest arguments suggested. *See Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145–46 (2d Cir. 2002). For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part.

**I.     Facts**

Plaintiff was born in India and is of Indian national origin. Prior to moving to the United

States in 1973, plaintiff received two bachelor's and two master's degrees. Plaintiff received a Master's in Guidance and Counseling from Central Michigan University in 1974. In 1982, plaintiff received a Master's from Michigan State University in Teaching English to Speakers of Other Languages ("TESOL"). In 1988, plaintiff commenced employment with the Board of Education of the City School District of the City of New York, now operated as defendant New York City Department of Education ("NYCDOE"). Plaintiff taught English as a Second Language ("ESL") to students for fifteen years and, except for the last two years of her career with the NYCDOE, received satisfactory evaluations. During the 2000–01 school year, plaintiff began teaching at PS 129. Plaintiff was the sole full-time ESL teacher and the ESL Coordinator for the school. Plaintiff's responsibilities included "testing students eligible for ESL, and teaching students in a 'pull-out' program in which students are removed from their regular classrooms for ESL." (Am. Compl. ¶ 11.)

As part of her duties as ESL Coordinator, plaintiff created schedules for the ESL classes she taught. In September 2001, defendant Marilyn Alesi, principal of PS 129 and plaintiff's immediate supervisor, created and imposed on plaintiff a schedule for ESL classes. Plaintiff complained to the Assistant Principal of PS 129 that Alesi's schedule did not allow sufficient time to provide ESL services. Alesi created a second schedule a few days later. Alesi did not consult with plaintiff before creating either schedule. In October 2001, plaintiff asked the Assistant Principal for additional tables and chairs due to an ambiguity in the schedule. At this time, Alesi called plaintiff into her office and told her "you can't even read. You don't know how to read." (Am. Compl. ¶ 13.) Plaintiff alleges that she was placed into fear of bodily harm when Alesi, while berating her, jabbed her finger at the schedule plaintiff held in front of her chest.

Following this incident, by letter dated October 14, 2001, plaintiff wrote to the school

2

district's ESL Coordinator, Kathy Mamounis, with a copy sent to the Superintendent and Alesi, to detail the concerns plaintiff had with the scheduling. In this letter, plaintiff complained that Alesi's scheduling violated ESL program requirements by causing ESL students to receive less than the state mandated instructional time.[1] Plaintiff pointed out that logistical concerns, such as shuttling children (including some with special needs) from room to room or between floors, created a reduction in instruction time, sometimes as much as 20 minutes per ESL session. Plaintiff also complained that the transportation of the youngest ESL students back to their regular classes conflicted with the scheduling of ESL sessions with older students and diminished the amount of instructional time for the older students. Plaintiff claimed that a dance class scheduled at a time overlapping with ESL instruction was resulting in a loss of 10 minutes per session. Plaintiff voiced concern over other scheduling conflicts, including a lunch period scheduled at the same time as an ESL session for second and third graders and early dismissal times for fifth and sixth graders.

As a result of the October 14, 2001 letter, plaintiff claims that defendants retaliated against her by having District 25 ESL Coordinator Katherine Mamounis conduct a formal observation of one of plaintiff's classes. Additionally, plaintiff maintains that defendants subjected her to "unwarranted scrutiny and criticism for the purpose of creating a 'paper trail' to be used to discipline" her. (Am.

---

[1] Part 154 of the Regulations of the Commissioner of Education lays the basic framework for ESL education in New York State. *See* 8 NYCRR § 154. Students in grades K–8 at the beginning and intermediate levels of English proficiency are required to have two units of ESL instruction. *Id*. § 154.2(d)(1)(ii)(a). For students in grades 9–12, beginner students are required to have three units of ESL instruction, while intermediate students are required to have two units. *Id.* § 154.2(d)(1)(ii)(c),(d). All students at the advanced level must take one unit of ESL, *id*. § 154.2(d)(1)(ii)(b),(e), and one unit of English Language Arts ("ELA"), *id*. § 154.2(e)(1)(I). A unit of instruction is defined as 180 minutes per week, and the minutes must be "distributed into equal daily allotments." DIV. OF ENGLISH LANGUAGE LEARNERS, NYC DEP'T OF EDUC., THE LAP MANUAL FOR ELL PROGRAMS 9–10 (2004), http://www.nycenet.edu/NR/rdonlyres/72A465AA-48CF-4c36-9728-7BA785B3C597/9294/LAPGuidelines.pdf.

Compl. ¶ 18.) Plaintiff alleges this action by the defendants "would not have been employed but for the defendants' animus towards the plaintiff because of her First Amendment speech." (*Id.*) She states that harassment over the three years proceeding her complaint caused her emotional and physical suffering, including heart problems, sleep disturbances, and other symptoms related to stress.

Plaintiff claims that defendant Alesi displayed her prejudice towards her because of her national origin in several ways:

(1) Alesi implied that plaintiff's accent and her nationality made her ignorant when she made the "you can't even read" comment in October 2001.

(2) During "a period of months around March 2001" Alesi insisted that plaintiff "follow the American custom of looking at a person's face while speaking" and told her, "You look me in the eye when you talk to me," and "Don't take your eyes off my face." (Am. Compl. ¶ 22.) These actions were intended only to "show contempt for the norms of deference prevailing in the culture of the plaintiff's national origin." (*Id.*)

(3) Alesi told plaintiff, "How can you teach ESL to the students if you yourself do not follow the cultural norms." (*Id.* ¶ 23.)

On June 9, 2003, a representative of the Superintendent of District 25, Anne Marie Iannizzi, was sent to observe plaintiff's classroom. Plaintiff claims that Alesi had already determined by this date that plaintiff was to receive an unsatisfactory rating for the year. According to plaintiff, Iannizzi had conducted around 50 observations within District 25 of teachers principals intended to rate unsatisfactory and had never rated a teacher's performance satisfactory. Plaintiff insists that

4

"Iannizzi's evaluation was merely a rubber-stamp of defendant Alesi's decision to seek plaintiff's termination." (Am. Compl. ¶ 29.)

On or about September 6, 2003, plaintiff was suspended with pay. On or about November 22, 2003, pursuant to N.Y. Educ. Law § 3020-a, plaintiff was served with disciplinary charges for misconduct, unsatisfactory performance, and excessive absenteeism during the 2001–02 and 2002–03 school years. Between January 21 and April 16, 2004, plaintiff was afforded sixteen days of hearings on the charges. Plaintiff's counsel during these hearings informed the Hearing Officer that no argument was being made regarding the motivation behind the charges, but plaintiff argued in a post-hearing brief to the Hearing Officer that Alesi's testimony should not be credited because of national origin animus. In a July 19, 2004 decision, the Hearing Officer ruled against plaintiff. Plaintiff was found guilty of failing to provide ESL services to a student for three months, improperly giving a blank copy of a test to a parent, improperly posting test scores, teaching four unsatisfactory lessons, and other specifications. The Hearing Officer did not find the unsatisfactory classroom observations by themselves enough to justify termination, as the plaintiff also had satisfactory observation on record. However, the Hearing Officer recommended that plaintiff be terminated because of the severity of failing to provide ESL services to a student for a period of three months and improperly giving a blank copy of a test to a parent. Plaintiff maintains that, as Alesi was the primary witness at the hearings and gave allegedly false testimony, the Hearing Officer would not have recommended termination but for Alesi's animus. Plaintiff was terminated on or about September 15, 2004.

After the hearing, but before the decision had been issued, on or about July 1, 2004, plaintiff filed a charge of discrimination with Equal Employment Opportunity Commission ("EEOC"). The

EEOC determined that the facts alleged in the charge failed to state a claim and issued a right to sue letter on or about July 28, 2004. Plaintiff filed her complaint against defendants on October 22, 2004.

II.     **12(b)(6) Standard**

The court's role in deciding a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) is simply to assess the legal feasibility of the plaintiff's claims rather than to weigh evidence that might eventually be offered at trial. *E.g.*, *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In deciding the motion, the court may consider documents upon which the plaintiff relied when drafting the complaint, such as "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). A motion to dismiss under 12(b)(6) must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

III.    **First Amendment Retaliation**

A plaintiff asserting a First Amendment retaliation claim must establish "(1) that the speech

or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Speech addressing a matter of public concern, i.e., "any matter of political, social, or other concern to the community," is protected by the First Amendment. *Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir. 1999) (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)).

Plaintiff's sole claim of protected speech is her October 14, 2001 letter to the Supervisor of Bilingual/ESL/Foreign Languages in District 25, Kathy Mamounis. The letter addresses plaintiff's concerns regarding Alesi's schedule and its effects on the teaching of ESL students. Plaintiff's letter focused heavily on her concerns that state-mandated ESL requirements were being violated, and she provided a by-the-minute breakdown of how she thought students were not receiving 180 minutes of instruction per week. The focus of plaintiff's comments is not, as defendants argue, plaintiff's own working conditions. Though plaintiff complained of a shortened lunch break, this was a side point to the details she gave on shortened ESL instruction. Viewed in the light most favorable to plaintiff, the letter touched on matters of public concern. *See, e.g.*, *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) ("statements regarding the quality of education provided by the public school … may reasonably be considered a matter of public concern"); *Fillie-Faboe v. Vocational Educ. & Extension Bd.*, Nos. 95-CV-4887, 97-CV-4930, 2001 WL 533739, at *6 (E.D.N.Y. May 11, 2001) (teacher's advocacy regarding quality of curriculum and teaching methodologies involved matters of public concern).

Plaintiff alleges that, as a result of her letter, she was affected by an adverse employment

action. Plaintiff complains of close monitoring, unwarranted criticism, suspension, and termination of employment. "[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." *Castro v. New York City Bd. of Education Personnel Dir.*, No. 96 Civ. 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998). However, plaintiff's termination qualifies as an adverse employment action. *See, e.g.*, *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

The next inquiry is whether plaintiff has sufficiently alleged a causal connection between the protected speech and her termination. Defendants argue that, as three years passed between plaintiff's October 14, 2001 letter and her termination, plaintiff has failed to plead causation.

> The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech. Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.

*Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citation omitted).

Plaintiff does not describe how animus flowing from her October 14, 2001 letter is connected to her termination. Plaintiff simply states that her termination was "caused by defendant Alesi's retaliatory animus towards plaintiff because of her First Amendment speech." (Am. Compl. ¶ 43.) Defendants point out that the only consequence following directly from her letter that plaintiff seems to allege is that Mamounis—the very person to whom she wrote the October 14, 2001 letter—visited her classroom to conduct a formal observation. Plaintiff also states in her complaint that, when she first complained about the schedule to the Assistant Principal, Alesi "issued a schedule a few days

later." (*Id*. ¶ 12.) Thus, from these facts, it seems that defendants may have even taken plaintiff's criticisms of the schedule and her letter under consideration.

There is a very low bar a plaintiff must meet in order to avoid dismissal for failure to state a claim upon which relief may be granted. In *Swierkiewicz v. Sorema N.A.*, the Supreme Court reemphasized this low bar when it held that the complaint in an employment discrimination case need not contain specific facts establishing a prima facie case but rather merely "a short and plain statement of the claim showing that the pleader is entitled to relief" as required under Fed. R. Civ. P. 8(a)(2). 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Following this decision, courts of appeal have disagreed on whether, for cases other than those requiring a heightened pleading standard, "conclusory allegations unaccompanied by any factual support" are sufficient for surviving a 12(b)(6) motion. *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 99 (E.D.N.Y. 2004); *see also Uhlein v. County of Jefferson*, No. 7:03-CV-1147, 2005 WL 928619, at *2–3 (N.D.N.Y. Apr. 20, 2005). As noted in *Straker*, the Second Circuit traditionally has "adhered to the proposition that conclusory allegations were subject to dismissal under Rule 12(b)(6), regardless of the nature of the claim." 333 F. Supp. 2d at 99 (collecting Second Circuit decisions in line with this proposition). Nevertheless, post-*Straker* and *Swierkiewicz*, the Second Circuit has made clear that imposing "'specific conditions on the form and content of' a complaint beyond those required by Rule 8(a)" is improper. *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 108 (2d Cir. 2005) (quoting *Wydner v. McMahon*, 360 F.3d 73, 74 (2d Cir. 2004)).

The Second Circuit has stated that "bald assertions and conclusions of law are not adequate [to state a claim] and a complaint consisting only of naked assertions, and setting forth no facts upon which a court could find a violation of the [law], fails to state a claim under Rule 12(b)(6)." *In re*

9

*Tamoxifen Citrate Antitrust Litigation*, 429 F.3d 370, 384–85 (2d Cir. 2005) (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)). "[M]inimal requirements are not tantamount to nonexistent requirements." *Twombly*, 425 F.3d at 109 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)). Yet, particularly since plaintiff is pro se, the court should grant leniency at this stage of the litigation. Therefore, defendants' motion to dismiss is denied with respect to plaintiff's First Amendment retaliation claim.

## IV. Title VII National Origin Discrimination Claims

### 1. Challenges to the Timeliness of Plaintiff's Claims

Defendants challenge plaintiff's claims as barred by Title VII's statute of limitations. Because New York has "a State or local agency with authority to grant or seek relief from" unlawful employment practices, i.e., the New York State Division of Human Rights, claims must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).[2] The phrase "unlawful employment practice" in the § 2000e-5(e)(1) timing

---

[2] Section 2000e-5(e)(1) sets 180 days as the standard time limit, with an exception where "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief" from unlawful employment practices. Second Circuit case law is somewhat unclear concerning whether the 300-day limit applies automatically in New York, to all Title VII claims, because of the existence of a state anti-discrimination agency. *Compare Forsyth v. Federation Employment & Guidance Serv.*, 409 F.3d 565, 572 (2d Cir. 2005) ("A complainant has 300 days from the date of the alleged unlawful employment practice to institute proceedings with a state or local agency. Otherwise, the complainant has only 180 days from the date of the alleged unlawful employment practice to file a complaint with the EEOC."), *and Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 n.6 (2d Cir. 1996) ("Title VII contains an additional requirement, not found in the ADEA, that must be met before the 180-day period is extended to 300 days: the person bringing the charge must "initially institute[ ] proceedings" with the state agency."), *with Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999) ("An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency."), *and Harris v. City of New York*, 186 F.3d 243, 248 n.3 (2d Cir.

requirement refers to a discrete act of discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113. While some discrete acts are easy to identify, such as "termination, failure to promote, denial of transfer, or refusal to hire," for claims such as hostile work environment, which are by their nature based on repeated conduct, § 2000e-5(e)(1) is satisfied if at least one of the acts on which the claim is based falls within the timing requirement. *Id*. at 114, 122. "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).

Plaintiff's allegations cover four separate time periods: (1) allegedly discriminatory comments made by Alesi in March and October 2001, (2) plaintiff's suspension in September 6, 2003, followed by disciplinary hearings conducted between January 21 and April 16, 2004, and (3) plaintiff's termination in September 2004. Plaintiff filed her EEOC charge on July 1, 2004—after the suspension but before her termination—and, by filing on the 299th day, just meets the 300-day time limit with respect to her suspension.

The court may also consider plaintiff's Title VII claims as to her termination, because, since

---

1999) ("Because the existence of its State Division of Human Rights ("DHR") makes New York a so-called deferral state for Title VII (and hence ADA) purposes . . . [this] calls for application of the 300-day rule . . . .").

    However, because of a "worksharing agreement" between the EEOC and the New York State Division of Human Rights, which provides *inter alia* that the two agencies are agents of one another, when an individual files initially with the EEOC, the charges have been "initially instituted" with the state agency, and the 300-day limit applies. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999); *Torrico v. Int'l Bus. Mach. Corp.*, 319 F. Supp. 2d 390, 403–04 (S.D.N.Y. 2004); *E.E.O.C. v. Rotary Corp.*, 297 F. Supp. 2d 643, 653–54 (N.D.N.Y. 2003).

the disciplinary hearings were conducted with possible termination in mind, this action is "reasonably related" to the suspension. *See Donahue v. Pendleton Woolen Mills, Inc.*, 719 F. Supp. 149, 152–53 (S.D.N.Y. 1988) ("It is established that district courts may assume jurisdiction over a claim 'reasonably related' to a charge filed with the EEOC, 'including incidents occurring after the filing of the EEOC claim.'") (quoting *Stewart v. United States I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985)).

Regarding defendants' argument that any conduct occurring prior to September 3, 2003 is time-barred, such conduct may be used as "background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113; *see also Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) ("relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act"). Plaintiff's Title VII claims of unlawful suspension and termination are timely, and it is inappropriate to exclude conduct that plaintiff has alleged in her complaint to support these claims.

2.  **Analysis of Title VII Claims**

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Disparate treatment claims under Title VII are evaluated under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the first step in the analysis, the plaintiff sets forth a prima facie case by showing that he or she (1) is a member of a protected class, (2) was qualified for the

position in question, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See, e.g.*, *McDonnell Douglas*, 411 U.S. at 802; *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003).

However, the Supreme Court has held that, to survive a 12(b)(6) motion to dismiss, the complaint in an employment discrimination action need only articulate "a short and plain statement of the claim showing that the pleader is entitled to relief" rather than specific facts in support of the prima facie case. *Swierkiewicz*, 534 U.S. at 508 (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, the *McDonnell Douglas* prima facie case "is an evidentiary standard, not a pleading requirement." *Id*. at 510. What is required of the "short and plain statement of the claim" is simply to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. (quoting *Conley*, 355 U.S. at 47).

Here, the plaintiff has alleged that she was suspended and terminated because she was discriminated against on the basis of her national origin, and plaintiff provides examples of the allegedly discriminatory attitudes she encountered at her place of employment. Plaintiff has thus given defendants sufficient notice of her claim, and it should not be dismissed at this stage in the litigation. In response to any weaknesses that defendants argue exist in plaintiff's complaint, the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512.

While defendants' motion to dismiss is denied with respect to the New York City Department of Education, however, it must be granted as to defendant Alesi, because there is no individual liability under Title VII. *See, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).

## V. State and Municipal Law Claims

Defendants argue that plaintiff's claims under the New York State Human Rights Law and the New York City Human Rights Law are barred because plaintiff failed to file a notice of claim. Pursuant to N.Y. Educ. Law § 3813(2):

> no action or special proceeding founded upon tort shall be prosecuted or maintained against any of the parties named in this section [including a "board of education"[3]] or against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or member or employee acting in the discharge of his duties within the scope of his employment and/or under the direction of the board of education, trustee or trustees, or governing body of the school unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law. Every such action shall be commenced pursuant to the provisions of section fifty-I of the general municipal law.

N.Y. Gen. Mun. Law § 50-e(1)(a) provides that "the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises."

Plaintiff concedes that she never filed the required notice of claim but seeks a leave of this court to file a late notice. N.Y. Gen. Mun. Law § 50-e(5) allows for applications to serve a late notice of claim but provides in subsection (7) that "[a]ll [such] applications . . . shall be made to the supreme court or to the [appropriate] county court." In light of these provisions, federal district courts[4] in this circuit have held that subject matter jurisdiction is lacking where a plaintiff seeks permission to file a late notice of claim. *See, e.g.*, *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003); *Roberts v. New York City Dep't of Corr.*, No. 96-CV-3210,

---

[3] The New York City Department of Education was formerly named the Board of Education of the City of New York.

[4] The issue apparently has not been decided by the Second Circuit. *See Corcoran v. New York Power Auth.*, 202 F.3d 530, 540 (2d Cir. 1999).

1998 WL 391815, at *1 (E.D.N.Y. Apr. 30, 1998). Plaintiff cites *Bloom v. New York City Bd. of Educ.*, where the U.S. District Court for the Southern District of New York granted plaintiff leave to file a late notice of claim. *See* No. 00 Civ. 2728, 2004 WL 639613 (S.D.N.Y Mar. 30, 2004). However, in *Bloom*, the defendants opposing plaintiff's application did not raise the issue of subject matter jurisdiction but instead argued that plaintiff's request should be denied because the statute of limitations had expired for her underlying state law claims. The court in *Bloom* analyzed the application as if it had been before the appropriate state court.

N.Y. Gen. Mun. Law § 50-e(7) specifically grants jurisdiction to certain state courts and does not include federal district courts. Based on the plain language in § 50-e(7), this court, in line with *Warner* and *Roberts*, declines to exercise jurisdiction over plaintiff's application to file a late notice of claim with respect to her state and municipal law claims. Defendants' motion to dismiss plaintiff's claims under the New York State Human Rights Law and the New York City Human Rights Law is granted.

## VI. Conclusion

Defendants' motion to dismiss is granted in part and denied in part. The court denies defendants' motion with respect to plaintiff's First Amendment retaliation claim. Defendants' motion to dismiss plaintiff's Title VII claim is denied as to the New York City Department of Education but granted as to Marilyn Alesi. Plaintiff's claims under the New York State Human Rights Law and the New York City Human Rights Law are dismissed because the court lacks subject matter jurisdiction to decide whether plaintiff should be allowed to file a late notice of claim.

SO ORDERED.

DATED: Brooklyn, New York
March 31, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge